IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

KEITH DARRELL LUTON,                    :
                                        :
            Plaintiff,                  :
                                        :
    v.                                  :           CASE NO:
                                        :           7:26-cv-75–WLS
IBM CORPORATION,                        :
                                        :
            Defendant.                  :
_____     :

## ORDER

Before the Court are the following matters:

1.      Defendant IBM Corporation's Motion to Strike and Motion for Implementation of Guardrails to Address Plaintiff's Procedurally Improper Filings (Doc. 24) ("IBM's Motion to Strike").

2.      *Pro se* Plaintiff's Motion for Preservation of Evidence and Expedited Discovery (Doc. 7) ("First Preservation Motion") and Plaintiff's Emergency Supplemental Motion for Preservation Order and Expedited Forensic Discovery Based on Newly Discovered Evidence (Doc. 35) ("Supplemental Preservation Motion" and together with the First Preservation Motion, the "Preservation Motions").

The Motions are addressed in turn below.

## I.    BACKGROUND

The relevant background for the current Motions is as follows:

Plaintiff Keith Darrell Luton ("Luton" or "Plaintiff") alleges that he entered into a Digital Platform Reseller Agreement ("Reseller Agreement") with IBM Corporation ("IBM") using Account ID f21397437d644674b76a7f14f2ef60e4 ("Account 60e4") to sell and distribute software products through the IBM Cloud Catalog. IBM contends that The New Faith Church and co-op Inc. ("NFC"), not Luton, was the party who entered into the Reseller Agreement with IBM. In any event, Luton alleges he successfully integrated a proprietary software product on the IBM Cloud Catalog. He further alleges that pursuant to the Reseller Agreement, IBM was required to provide ninety days written notice prior to any termination

1

or suspension of Account 60e4, but did not do so. Prior to termination of Luton's access to Account 60e4, Luton noticed activity in the account that made his suspicious that IBM or a third party was improperly accessing or using his software.

The operative Second Amended Verified Complaint (Doc. 22) ("SAC") asserts the following claims against IBM: Count I-Breach of Contract; Count II-Misappropriation of Trade Secrets; Count III-Failure to Preserve Electronically Stored Information and Request for Sanctions; and Count IV-Unjust Enrichment.

## II.   IBM's MOTION TO STRIKE

IBM filed its Motion to Strike on April 23, 2026. Plaintiff's response (Doc. 26) was filed the next day on April 24, 2026, and IBM's reply (Doc. 34) was filed May 8, 2026. Thus IBM's Motion to Strike is ripe for resolution. Therein, IBM moves to strike three documents: (a) the Master Index of Plaintiff's Reply Filings, Table of Authorities, and Supporting Materials (Doc. 16) ("Plaintiff's Reply"), (b) Plaintiff's Supplemental Notice Clarifying Individual Standing and Timeline of the Reseller Agreement (Doc. 17) ("Notice Clarifying Standing"), and (c) Plaintiff's Notice of Clarification Regarding Contracts at Issue (Supplement to Pending Second Amended Complaint, Dkt. 13) (Doc. 18) ("Supplement to SAC"). In addition, IBM moves to strike Count IV of the SAC. Each document is reviewed in turn. Further, IBM requests the Court impose guidelines and restrictions on Plaintiff's future filings.

### A.   Plaintiff's Reply (Doc. 16)

Plaintiff's Reply was filed in response to IBM's Response (Doc. 14) to the Plaintiff's First Preservation Motion. Instead of complying with M.D. Ga. L.R. 7.4 which allows ten pages for reply briefs, Plaintiff's Reply, including ten separate briefs filed as exhibits to such Reply was a total of 124 pages. IBM requests that the Plaintiff's Reply be struck for two reasons. IBM argues that the Order (Doc. 10) requiring IBM to file its Response to the First Preservation Motion indicated that the matter would be taken under consideration after IBM's Response was filed, and thus, Plaintiff needed to seek permission to file such Reply. Second, Luton did not obtain leave to file a reply in excess of ten pages—let alone 124 pages.

First, although the Order (Doc. 10) indicated the First Preservation Motion would be taken under consideration upon the filing of IBM's Response, it did not specifically preclude the filing of any further briefs without permission. In fact without restriction by the Court,

2

there is ordinarily a motion, response, and reply. Had Plaintiff's Reply complied with local rules the Court would normally have considered it—particularly in light of Luton's *pro se* status.

However, the filing of a brief that is 114 pages in excess of the Court's Local Rules is unjustified, unwarranted, and an unnecessary burden on this Court's time. "[A] party who proceeds *pro se* must comply with the same procedural rules that other litigants must follow." *Diaz v. AT&T Mobility*, No. 1:10-CV-3356, 2013 WL 12098747, at *3-4 (N.D. Ga. July 19, 2013), adopted by, 2013 WL 12097948 (N.D. Ga. Aug. 9, 2013). In summary, "[c]ourts show leniency to *pro se* litigants, however, *pro se* litigants are still required to conform to the procedural rules, and the court is not required to rewrite deficient pleadings." *Jacox v. Dep't of Def.*, 291 Fed. App'x 318, 318 (11th Cir. 2008) (per curiam) (citing *GJR Invs., Inc. v. Cnty of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

It is also worth noting that Plaintiff's 124-page Reply was filed approximately 6 <u>hours</u> after IBM's Response. It includes a Consolidated Table of Authorities listing 38 cases and 6 statutes and rules cited in the attached 10 briefs.[1] It is apparent to this Court that it would be physically impossible to read and analyze the holdings of more than 44 authorities, let alone prepare and thoroughly review 124 pages of briefing within that time frame. It is apparent that Plaintiff is using Artificial Intelligence ("AI") tools to generate his filings with this Court. Nothing prohibits parties, including *pro se* Plaintiff, from using AI. However, Plaintiff is notified that he is required to thoroughly check all such pleadings drafted with AI, including not only reading the pleading itself, but confirming that case citations generated by AI exist and that such cases stand for the propositions stated in AI generated documents before filing such documents with this Court. The Middle District of Georgia instructs *pro se* litigants that they "remain responsible under Rule 11 of the Federal Rules of Civil Procedure for ensuing all factual information and legal authority provided to the court is accurate. If AI is used, the

---

[1]In fact Plaintiff cites to more than forty-four cases in his ten briefs because he did not include all cases cited in the ten briefs in the Consolidated Table of Authorities. (*Compare* Doc. 16 at 3–6 *with* Table of Authorities attached to each of the ten briefs in Docs. 16-1 through 16-10).

information should be checked to ensure its accuracy."[2] Plaintiff is cautioned that failure to do so may result in the Court imposing sanctions.[3]

Luton requests that he be allowed to refile a brief of ten pages if the Court strikes Plaintiff's Reply.

Based on the foregoing, the Court finds that the Plaintiff's Reply (Doc. 16) fails to comply with the Court's Local Rules and should be stricken from the Record. Accordingly, Plaintiff's Reply (Doc. 16) is **STRICKEN** from the Record.

Further, given the extensive briefing filed with respect to the Preservation Motions, the Court finds further briefing is unwarranted. Thus, Plaintiff's request to refile the Plaintiff's Reply is **DENIED**.

## B. Notice Clarifying Standing (Doc. 17) and Supplement to SAC (Doc. 18)

Plaintiff's motion to file the SAC (Doc. 13) was labeled as "unopposed" although he had not received IBM's consent prior to filing such motion. IBM filed a notice that it would consent to the SAC, but would not consent to further amendments to the complaint. (Doc. 15). By Order (Doc. 20) entered April 17, 2026, the Court granted Plaintiff's motion to file the SAC specifically allowing Plaintiff to file the Second Amended Complaint (Doc. 13-1) that was attached to his motion to amend (Doc. 13).

Both the Notice Clarifying Standing (Doc. 17) and the Supplement to the SAC (Doc. 18) are essentially amendments to the SAC filed after IBM noticed its approval of the SAC (Doc. 13-1) which was attached to the motion to amend. Specifically, the Notice Clarifying Standing attempts to add facts and exhibits to support Luton's arguments that he was the party that entered into the Reseller Agreement with IBM. Contrary to the Court's April 17, 2026

---

[2]*See* Filing Without an Attorney, available at https://www.gamd.uscourts.gov/filing-without-attorney (last visited May 28, 2026).

[3]The Middle District of Georgia further instructs as to the use of AI by *pro se* litigants that:

> Pro se parties are strongly encouraged to be cautious when using Artificial Intelligence (AI) tools such as ChatGPT. AI does not alleviate a party's responsibility for making sure that all facts and legal authorities cited in court filings are accurate. The failure to do so may result in sanctions under Rule 11 of the Federal Rules of Civil Procedure. Those sanctions could include, if appropriate, dismissal of your lawsuit.

*See* M.D. Ga. Use of Artificial Intelligence, available at https://www.gamd.uscourts.gov/sites/gamd/files/Use_of_AI_by_Pro_Se_Litigants.pdf (last visited May 28, 2026).

Order, the SAC that was filed was not the same document filed as Doc. 13-1. Rather, in addition to other changes, the SAC attempts to incorporate documents attached as exhibits to the Notice Clarifying Standing as exhibits to the SAC. The Supplement to the SAC (Doc. 18) specifically states that it is a "(Supplement to Pending Second Amended Complaint, Dkt. 13)." (Doc. 18 at 1).

Thus, the Court finds that the Notice Clarifying Standing and the Supplement to SAC are amendments to the SAC which were not agreed to nor authorized by this Court and should be stricken from the Record. Accordingly, the Notice Clarifying Standing (Doc. 17) and the Supplement to SAC (Doc. 18) are **STRICKEN** from the Record. The uncontested SAC filed without opposition is ordered filed and is now the operative complaint in this case.

### C. **Count IV of the SAC**

As noted above, the SAC filed by Plaintiff does not comply with the Court's April 17, 2026 Order. In addition to attempting to incorporate exhibits attached to the Notice Clarifying Standing noted above, Plaintiff added a new Count IV against IBM for Unjust Enrichment. Further, Plaintiff added the following paragraphs to the beginning of the SAC (Doc. 13-1) when it was filed:

> NOTE ON AMENDMENT: Plaintiff files this Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) and the Court's Order of April 17, 2026 (Dkt. 20). This amendment makes three changes from the previously proposed complaint (Dkt. 13, Ex. 1): (1) Count III has been retitled and reframed from "Spoliation of Evidence" to "Failure to Preserve Electronically Stored Information and Request for Sanctions Under Fed. R. Civ. P. 37(e)," consistent with Plaintiff's prior representation to this Court (Dkt. 16) that spoliation is not asserted as an independent cause of action; (2) Count IV for Unjust Enrichment has been added as a standalone count, consistent with Plaintiff's substantive unjust enrichment allegations already before this Court in the Amended Complaint and Reply briefing (Dkt. 16); and (3) a clarifying parenthetical cross-reference has been added in Paragraph 11 noting the same-day relationship, already documented in the existing allegations, between Plaintiff's filing of Support Case CS4383345 and IBM's cancellation of the lutonphysics.com account, both dated September 26, 2025. No new parties or entirely new factual allegations have been added. All claims arise from the same nucleus of operative facts previously before the Court.

> NOTE ON EXHIBITS: All exhibits referenced herein were previously filed with this Court and are incorporated by reference. Exhibit designations correspond to attachments filed with Plaintiff's Amended Complaint (Dkt. 3)

and Plaintiff's Supplemental Notice (Dkt. 17) unless otherwise noted. Plaintiff does not re-file previously submitted exhibits with this Second Amended Complaint.

(Doc. 22 at 1). None of these changes were authorized. Plaintiff did not file a proper motion for leave to amend the complaint to make these changes. Further, incorporation by reference of exhibits scattered throughout other documents in the Record is impermissible. An amended pleading replaces in its entirety the prior pleading.[4] Plaintiff attempts to unilaterally effect these changes without leave of Court or the agreement of the opposing party and without complying with the Federal Rules of Civil Procedure. This, the Court will not allow.

The Court finds that IBM's request that the Court strike Count IV of the SAC is well-taken and should be granted. Accordingly, Count IV of the SAC is **STRICKEN**.

### D. **Guidelines and Restrictions**

IBM argues that Plaintiff's filing of procedurally improper, voluminous filings has multiplied the time and costs of this litigation and requests the Court impose restrictions and guidelines on Plaintiff's filing with the Court. (Doc. 24 at 7–9). In addition to other requirements, IBM specifically requests that any filings made without leave of court when required or any filings that include more pages than allowed should be deemed stricken without further order of the Court or motion by IBM. (*Id.* at 8).

At this time, taking into account the requirements of filings as discussed by the Court herein, the Court declines to impose on Plaintiff any guidelines other than those already stated on the Middle District of Georgia website as cited above, the Federal Rules of Civil Procedure, and the Middle District of Georgia Local Rules. However, the Court reminds Plaintiff that all filings must comply with the Federal and Local Rules of this Court and with the Orders of this Court. The Court also encourages Plaintiff to obtain and use a copy of Guide for Self-Represented Litigants available at https://www.gamd.uscourts.gov/sites/gamd/files/Guide ForSelfRepresentedLitigants.pdf.

---

[4] On April 23, 2026, IBM filed a Motion to Dismiss (Doc. 25). Therein, IBM cites to some of the exhibits Plaintiff seeks to incorporate by reference into the SAC. The Court reserves the issue of Plaintiff's incorporation of exhibits into the SAC for consideration with the Motion to Dismiss.

6

### E.  Conclusion as to IBM's Motion to Strike

Based on the foregoing, the Court finds that Defendant IBM Corporation's Motion to Strike and Motion for Implementation of Guardrails to Address Plaintiff's Procedurally Improper Filings (Doc. 24) should be and hereby is **GRANTED IN PART and DENIED IN PART** as follows:

1.    The Master Index of Plaintiff's Reply Filings, Table of Authorities, and Supporting Materials (Doc. 16), Plaintiff's Supplemental Notice Clarifying Individual Standing and Timeline of the Reseller Agreement (Doc. 17), and Plaintiff's Notice of Clarification Regarding Contracts at Issue (Doc. 18) are **STRICKEN** from the Record of this case. The Clerk is **DIRECTED** to strike such documents from the Record.

2.    Plaintiff's request to refile Plaintiff's Reply (Doc. 16) is **DENIED**.

3.    Count IV of the Second Amended Complaint is **STRICKEN**.

4.    IBM's request that the Court impose guidelines and/or restrictions on Plaintiff's filing is **DENIED, WITHOUT PREJUDICE**, consistent with this Order**.**

## III.    PRESERVATION MOTIONS

In the First Preservation Motion, Luton moves for an order requiring IBM to preserve electronic evidence and to allow limited expedited discovery. Luton asserts that on February 12, 2026, and March 2, 2026, he received notice that IBM had "scheduled purging and decommissioning of services such as "Code Risk Analyzer," "DevOps Insights," and "Classic Bare Metal" that Luton alleges contain evidence in this case. Luton asserts "IBM had actual notice of this litigation no later than service of the original complaint and the certified mail preservation demand on March 6, 2026, and constructive notice no later than Plaintiff's formal fraud audit request and support ticket CS4383345 filed September 26, 2025." (Doc. 7 at 1). Plaintiff's Preservation Motion (Doc. 7) was filed March 31, 2026.

IBM's Response (Doc. 14) was filed April 9, 2026. Therein, IBM acknowledges its obligation to preserve evidence and notes that it issued a hold notice pursuant to its standard procedure upon being served with this lawsuit. A declaration of Jason Ratigan, a Senior E-Discovery Specialist, is attached to the Response indicating that the hold was issued. IBM also states that the notices to which Luton referred relate to version or license upgrades for the named products and do not state that the services or related materials will be erased or

destroyed. Further, IBM states that none of the notices relate to products or services identified in the complaint as the IBM services used by Luton or NFC.

In the Supplemental Preservation Motion, filed May 9, 2026, Luton asserts IBM had notice of this potential lawsuit by July 4, 2025, when he filed an urgent notice of "Unauthorized Submission of Proprietary Research . . . Potential IP Theft" and requested a meeting with IBM Quantum's IP counsel. (Doc. 35 at 3) Luton also alleges that searches of certain files he has looked for come back with a notation of "file not found." Luton asserts this is evidence of spoilation.

IBM's Response (Doc. 46) opposing the Supplemental Preservation Motion was filed May 22, 2026. Therein, IBM reiterates that it has taken steps to preserve the evidence as required, that this case remains in the pleading stage, a scheduling order has not been entered, and discovery has not yet commenced. Further, IBM states that Luton's "evidence" of spoilation relates to accounts never previously identified by Plaintiff and the accounts identified do not appear to belong to Plaintiff. Rather, the accounts relate to two individuals who are not parties to the SAC. However, out of an abundance of caution, IBM has added these accounts to its hold notice for this case.

In his Reply (Doc. 48), Plaintiff states he accepts the distinction IBM makes that Plaintiff's loss of access to data is not the same thing as IBM deleting data. (*Id.* at 1). However, Plaintiff now asserts that "[i]f the data was not deleted, IBM can confirm what it preserved under oath." (*Id.*). Plaintiff requests the Court order IBM to provide "a verified sworn inventory — not production of underlying files — of all data, documents, accounts, communications, and records IBM has placed under litigation hold in this matter." (Doc. 48 at 3). Plaintiff requests the inventory identify, by category and identifier, all preserved records associated with multiple accounts listed in Plaintiff's Reply. (Doc. 48 at 3). Plaintiff fails to provide any authority for imposing such requirement on IBM. Nor has he provide good cause for such imposition. Most importantly, IBM, consistent with its responsibility, has noted on the Record of this case its compliance with preservation requirements.

This case is at the initial pleading stage. Discovery has not been authorized in this case. IBM has a pending Motion to Dismiss which is to be resolved on the pleadings. Plaintiff's attempts to obtain discovery and to file proposed discovery in the Record are premature and

8

do not comply with the Federal Rules of Civil Procedure nor with this Court's Local Rules. The Court is satisfied that IBM is fully cognizant of its duties to preserve evidence and that it has put in place the necessary procedures to satisfy those duties.

Accordingly, Plaintiff's Motion for Preservation of Evidence and Expedited Discovery (Doc. 7) and Plaintiff's Emergency Supplemental Motion for Preservation Order and Expedited Forensic Discovery Based on Newly Discovered Evidence (Doc. 35) are **DENIED, WITHOUT PREJUDICE**.

Additionally, in order to bring this case back into alignment with the actual stage of the litigation, the Court finds it necessary to impose the following: This case is **STAYED** except for the pending Motion to Dismiss. No further filings, including notices or withdrawals of documents, are permitted without prior order of the Court upon timely written motion showing good cause. The Court will strictly enforce this stay pending further order of the Court.

The Court notes that NFC, a previously named Plaintiff, is not a party that may proceed *pro se* and no attorney has made an appearance on its behalf.[5] As previously noted by the Court, a corporation must be represented by counsel. Further proceedings may irretrievably and negatively impact this unrepresented party. Plaintiff Luton may represent only himself. Therefore, it is imperative that the Court clarify this issue for the Record as early as possible in these proceedings. The Court will address this matter by separate order.

**SO ORDERED**, this 1st day of June 2026.

/s/W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**

---

[5] NFC was initially named as a party plaintiff in this matter. However, because NFC is a corporation, it is required to be represented by counsel. *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993) (corporations, partnerships, associations, and artificial entities may only appear in federal courts through a licensed attorney). Upon NFC's failure to comply with the Court's Order (Doc. 5) to obtain counsel, as warned, the Court *sua sponte* entered an Order (Doc. 19) dropping NFC from this lawsuit.